**Fred TWEETY, Jr., Appellant,**

v.

**J. P. MITCHELL, Warden, et al., Appellees.**

**No. 81–6771.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1982.

Decided June 10, 1982.

Stephen A. Saltzburg, University of Va. School of Law, Charlottesville, Va., for appellant.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Senior Circuit Judge, and MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

This is an appeal from a judgment of the district court dismissing Mr. Tweety's petition for a writ of habeas corpus. Tweety sought habeas relief on the ground that the jury instructions in his state court trial for murder unconstitutionally relieved the state of the burden of proving intent. The district court determined that the Virginia Supreme Court had found that Tweety had not objected to the jury instructions at trial as required by Virginia law and that this failure was a procedural bar to federal habeas corpus relief under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We affirm because the *Wainwright* procedural bar may well apply to this petition, and, in any event, the chal-

lenged jury instructions were harmless error beyond a reasonable doubt.

## I.

On April 26, 1974, Fred Tweety, Jr. was tried in the circuit court of Campbell County, Virginia, and found guilty of first degree murder for the shooting of Louie Alexander Rosser. The shooting occurred on December 30, 1973, at a dance Rosser was supervising. The evidence presented to the jury showed that Tweety went to the dance with a gun in his belt, that he danced inside the building for a short time, and that he subsequently went outside on the porch. Tweety and others began lighting cherry bombs and throwing them in the yard. When Rosser came outside and told Tweety to leave, Tweety shot Rosser.

The Commonwealth's case consisted of two eyewitnesses who testified that Rosser spoke to Tweety but did not hit him, and that Tweety shot Rosser several times, ran a few steps, then turned around and fired more shots at him. All witnesses testified that Rosser had not been seen carrying a gun that night, although several witnesses said Rosser often carried a gun during the day when he was working in the woods.

Tweety's case was one of self defense. One defense witness testified that Rosser first threatened to hit Tweety and then hit him twice on the back of the head with his hand before Tweety shot at him. Tweety testified that Rosser hit him, that he stumbled forward, heard what he thought to be shots (which apparently could have been cherry bombs exploding), then turned around and shot Rosser.

The court instructed the jury, *inter alia*, that "a man is presumed to intend that which he does, or which is the immediate or necessary consequences (sic) of his act" and that "the law presumes that a person using a deadly weapon to kill another acted with malice, and the burden is thrown upon the person so using a deadly weapon to overcome this presumption." Tweety was found guilty of first degree murder and sentenced to forty years imprisonment.

In Tweety's direct appeal to the Virginia Supreme Court on the ground that there was insufficient evidence for an instruction on first degree murder, his conviction was affirmed in an unpublished opinion. He then filed petition in the United States District Court for the Western District of Virginia for habeas corpus relief on the same grounds, which was also dismissed. The Commonwealth had filed a motion to dismiss on the ground that "instructions to the jury are matters of state law and procedure" only.

On February 17, 1978, Tweety filed a habeas writ with the Supreme Court of Virginia arguing that the jury instructions violated *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), by relieving the prosecution of the burden of proving malice. The Commonwealth again filed a motion to dismiss on the ground that Tweety's failure to object to the instruction at trial violated Virginia's contemporaneous objection rule and precluded consideration of the habeas challenge. The Commonwealth also argued on the merits that the challenged instruction complied with state law and federal due process. The Supreme Court of Virginia denied the writ without stating whether its decision was based on the state procedural bar or on the merits of the petition.

On June 28, 1979, Tweety filed a habeas corpus petition in the federal district court again arguing that the jury instructions violated *Mullaney.* The Commonwealth this time argued that the petition was repetitive of the one previously filed in district court. The district court held that the petition was not repetitive but denied the petition *sua sponte* on the state procedural ground that Tweety had failed to make a contemporaneous objection to the alleged erroneous instruction.

## II.

■ Tweety makes his most substantial challenge to the jury instruction "that a man is presumed to intend that which he does, or which is the immediate or necessary consequences of his act." He argues

that a reasonable juror could have viewed the instruction as a mandatory presumption which would relieve the Commonwealth of proving beyond a reasonable doubt that Tweety intended to shoot Louie Rosser. Shifting the burden of proof on the intent issue from the Commonwealth to the defendant violates federal due process standards discussed by the Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In fact, an instruction almost identical to the one Tweety challenges was held to be unconstitutional by the Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[1]

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), however, the Supreme Court held that failure to make a contemporaneous objection to an alleged error in a state criminal trial provides an independent and adequate state ground to preclude federal habeas corpus review absent a showing of just cause or prejudice accompanying a state procedural waiver.[2] That rule was applied recently by this court in *Dooley v. Sheffer, decided sub nom. Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir. 1978).[3]

In Virginia, as in other states, objections must be made at the appropriate time at trial and must be stated with reasonable certainly in order to preserve the alleged error. *See* Va.Sup.Ct.R. 5:21; *Whitley v. Patterson*, 204 Va. 36, 129 S.E.2d 19 (1963). Virginia Supreme Court Rule 5:21, however, provides an exception to the state's contemporaneous objection rule by allowing state appellate review of errors not objected to at trial "for good cause shown" or to enable the court "to attain the ends of justice."[4] The Virginia Supreme Court has applied these exceptions in the past to prevent a miscarriage of justice. *See, e.g., McKeon v. Commonwealth*, 211 Va. 24, 175 S.E.2d 282 (1970); *Cooper v. Commonwealth*, 205 Va. 883, 140 S.E.2d 688 (1965).[5]

---

**1.** Although Tweety was convicted before *Sandstrom* was decided, and the Supreme Court has not decided whether the holding in that case is to be applied retroactively, two circuits have so applied it, *Burton v. Bergman*, 649 F.2d 428 (6th Cir. 1981); *Dietz v. Solem*, 640 F.2d 126 (8th Cir. 1981), while one has not. *U. S. v. Spiegel*, 604 F.2d 961 (5th Cir. 1979). It would not appear to make any difference whether the specific holding of *Sandstrom* is given retroactive effect because the principles relied on in that case which also apply to this case are found in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which apply retroactively. *See Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

**2.** Virginia Supreme Court Rule 3A:23(c) requires objections to jury instructions to be made before the trial court instructs the jury unless the court grants leave to object at a later time.

**3.** In *Dooley*, the court relied on the following language from *Hankerson v. North Carolina*, 432 U.S. 233, 244 n.8, 97 S.Ct. 2339, 2345 n.8, 53 L.Ed.2d 306 (1977):

Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions was as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made one here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error.

**4.** The entire rule provides as follows:

The petition for appeal shall contain assignments of error and the form, contents and length of the petition for appeal shall conform in all respects to the requirements of the appellant's opening brief. Error will not be sustained to any ruling below unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice. Only errors assigned in the petition for appeal will be noticed by this Court and no error not so assigned will be admitted as a ground for reversal of a decision below. An assignment of error which merely states the judgment is contrary to the law and the evidence is not sufficient.
Va.Sup.Ct.R. 5:21.

**5.** The court has also expressly invoked the procedural rule and stated why the exceptions do

In this case, the Virginia Supreme Court failed to state the basis for its dismissal of Tweety's habeas petition. The Commonwealth argued that the petition should be dismissed because Tweety's counsel failed to make a contemporaneous objection to the jury instruction at trial, or, alternatively, that the instruction did not violate due process. Thus, we are left to speculate whether the Virginia Supreme Court dismissed the case on state procedural grounds which would preclude federal habeas corpus review under *Wainwright v. Sykes, supra,* or whether the court dismissed the opinion upon consideration of the merits, in which case a review of the merits by this court will be appropriate.[6]

Our inquiry into what the Virginia Supreme Court was thinking when it summarily dismissed Tweety's habeas corpus petition is aided by that court's decision in *Coppola v. Warden,* 222 Va. 369, 282 S.E.2d 10 (1981). In that case, Frank Coppola was convicted of capital murder and a number of other offenses on September 26, 1978, at a trial in which the jury was given an instruction concerning a presumption of intention from a person's actions almost identical to the instruction given the jury in this case. After exhausting his appeals, Coppola filed a habeas corpus petition in state

circuit court arguing, *inter alia,* that the jury instruction violated *Sandstrom v. Montana, supra.* The petition was denied and the Virginia Supreme Court granted an appeal limited to the issue of the constitutionality of the jury instruction. In a per curiam opinion, the Supreme Court held that "the failure of Coppola's counsel to interpose at trial a contemporaneous objection ... precludes review of the instruction at this time." 222 Va. at 371, 282 S.E.2d at 11 (quoting *Hankerson v. North Carolina,* 432 U.S. 233, 244 n.8, 97 S.Ct. 2339, 2345 n.8, 53 L.Ed.2d 306 (1977)).

Although *Coppola* may not be binding precedent because it was decided after the Virginia Supreme Court dismissed Tweety's habeas petition in this case, it certainly is a strong indication that the Virginia Supreme Court may well have dismissed Tweety's petition for failure to make a contemporaneous objection to the jury instruction. In any event, we are not prepared to presume that the court dismissed Tweety's petition on the merits simply because the court failed to state the grounds for its decision,[7] and we agree with the district court that the Virginia Supreme Court probably dismissed Tweety's state habeas petition for failure to make a contemporaneous objection.[8]

---

not apply in at least two appeals. *See Reil v. Commonwealth,* 210 Va. 369, 171 S.E.2d 162 (1969); *Henson v. Commonwealth,* 208 Va. 120, 155 S.E.2d 346 (1967).

**6.** *Compare Engle v. Isaac,* — U.S. —, —, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982) (procedural bar strictly applied where petitioner failed to object to erroneous jury instruction in state court conviction in Ohio).

**7.** Tweety asserts that his case is similar to *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) where the Supreme Court considered the merits of a habeas corpus petition even though the petitioners failed to make appropriate objections to the alleged errors challenged in the petition. In that case, however, the New York state contemporaneous objection rule was less strict than the Virginia rule at issue in this case. In its opinion the Supreme Court pointed out that: (1) New York generally allowed review of errors affecting fundamental constitutional rights, even when appropriate objections were not made; (2) the prosecution never ar-

gued to any state court that a procedural default had occurred; (3) the state appellate court's summary affirmance raised the inference that it accepted the trial court's decision on the merits; and (4) a careful review of the decision of the New York Court of Appeals indicated that the court probably ruled on the merits. None of these circumstances are present in this case; they sufficiently distinguish that case from this one.

**8.** *Wainwright v. Sykes, supra,* provides an exception to the state procedural bar to federal habeas corpus relief for the petitioner who can show cause for failure to raise the alleged error at his state trial and prejudice resulting from such failure. Tweety does not argue that this exception applies here but rather, chooses to rely on his contention that the *Wainwright v. Sykes* bar does not apply in this case at all. We note, however, that after oral argument in this case, the Supreme Court reaffirmed its holding in *Wainwright v. Sykes* "that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default

Even if the Virginia Supreme Court dismissed Tweety's petition on the merits, and even if we assume that the instruction violates *Sandstrom v. Montana, supra,* and that *Sandstrom* should be given retroactive effect, the petition should be denied because the error alleged was harmless beyond a reasonable doubt. To determine whether an erroneous jury instruction when considered with the instructions as a whole is harmless beyond a reasonable doubt, three factors are considered—whether mandatory or permissive language was used, whether mitigating instructions were present, and whether there was an overwhelming amount of evidence of intent offered at trial. On the first element, the fact that the word "presumes" was used in the challenged instruction indicates a mandatory quality, and, therefore, weighs in favor of finding the instruction to be substantial rather than harmless error. *See Burton v. Bergman,* 649 F.2d 428 (6th Cir. 1981); *Dietz v. Solem,* 640 F.2d 126 (8th Cir. 1981). On the other hand, there were mitigating instructions. The judge told the jury to consider the instructions "as a whole;" that they must be convinced "from the evidence beyond a reasonable doubt;" that the Commonwealth must prove every element of the crime from the evidence beyond a reasonable doubt; and that it must confine its consideration to the evidence. Although these instructions are not addressed specifically to the instruction concerning the presumption of intent, they should be considered to mitigate to some degree the effect of that instruction. Finally, the overwhelming weight of the evidence at trial supported a finding of premeditation and malicious intent beyond a reasonable doubt. Although Tweety testified that Rosser threatened him, hit him with his hand and that he thought he heard shots before he fired at Rosser, there was absolutely no evidence that Tweety had a reasonable basis for believing that he was in imminent danger of severe bodily harm. Two eyewitnesses testified that Rosser had

spoken to Tweety, was not armed, did not hit Tweety, but that Tweety shot Rosser several times, ran, then turned around and fired more shots at him. One witness said he heard five shots. Another witness did say Rosser hit Tweety on the head with his hand and that Tweety turned around and shot him. Even though several witnesses did testify Rosser often carried a gun when he was working in the woods, all witnesses testified that they had not seen Rosser carrying a gun that night.

## III.

The jury instruction given in violation of *Sandstrom v. Montana, supra,* and *Mullaney v. Wilbur, supra,* is harmless error beyond a reasonable doubt because of the presence of mitigating instructions and the overwhelming weight of evidence presented at trial. The other alleged errors in the instructions challenged by Tweety are without merit. Thus, although it is likely the Virginia Supreme Court dismissed Tweety's state habeas petition for failure to make a contemporaneous objection, even if that court considered the merits, the petition in this court should be dismissed.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

Dissent is an uncongenial judicial pursuit, as the present case demonstrates. The crime with which the defendant was charged was ugly, and the evidence was abundantly sufficient to convict under proper instructions to the jury. Tweety's own version, if believed, however, would have exonerated him. The testimony of one other witness lent some credence to Tweety's tale. It is elementary that the jury, as the weigher of credibility, may accept the testimony of one witness and reject the evidence of a dozen others. Thus I cannot accept the harmless error disposition of the majority. *Cf. Eberhardt v. Bordenkircher,* 605 F.2d 275, 279 (6th Cir. 1979)

---

must demonstrate cause and actual prejudice before obtaining relief." *Engle v. Isaac,* — U.S. —, —, 102 S.Ct. 1558, 1568, 71

L.Ed.2d 783 (1982). *See also, U. S. v. Frady,* — U.S. —, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

(error was not harmless where the defendant "presented an alibi which, though far from indisputable, was consistent and credible enough that it might have been accepted by a reasonable juror"); *Dallago v. United States*, 427 F.2d 546, 559 (D.C.Cir.1969) (error was not harmless where "[t]he conviction necessarily rests to a substantial degree on the jury's assessment of the credibility of the opposing Government and defense witnesses, including appellant").

Nor am I comfortable with the conclusion that there was failure to make a contemporaneous objection which affords an adequate basis for the Virginia court's denial of *habeas corpus* and insulates the conviction from review by us. In my humble judgment, that procedural basis for disposing of cases of this sort is a smokescreen behind which to hide when, on the merits, articulation of grounds for denying relief would be difficult, or even merely tedious, but the state court is satisfied that the end result was appropriate, without regard to whether it was reached in an appropriate manner. If Tweety's case had been appealing on the merits, I regard it as highly probable that the Virginia Supreme Court would have reached the merits in order "to attain the ends of justice." Va.Sup.Ct.R. 5:21. A state contemporaneous objection rule with an exception which turns on the merits of a federal constitutional claim cannot in my view serve as an independent and adequate state ground for decision.

In that connection, I find unconvincing the majority's reliance on *Coppola v. Warden*, 222 Va. 369, 282 S.E.2d 10 (1981)—in which the Virginia Supreme Court specifically mentioned as its basis for decision "the failure of Coppola's counsel to interpose at trial a contemporaneous objection"—to interpret what the Virginia Supreme Court meant when in Tweety's case it refrained from using any such language. The reasons for applying the logic of *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) are strong, and I make so bold as to suggest that, if Tweety, in the eyes of the majority, had an appealing case creating a persuasive likelihood that the ends of justice had not been obtained, my colleagues would not have reached the conclusion that the taciturnity of the Virginia Supreme Court should be construed as an intended application of the contemporaneous objection requirement and not a decision on the merits.

For me, the ends of justice are not served when an instruction has been given violative of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). If he were tried again, Tweety might well be convicted again. Nevertheless, he has the right to insist that the trial be fair, and we the responsibility to see that it is so. Thus I would grant the writ.